## UNITED STATES v. PENN et al.

### No. 78.

Circuit Court of Appeals, Second Circuit.

Nov. 30, 1942.

Harold S. Fleischer, of New York City, for appellants.

Peter J. Donoghue, of New York City, for appellee.

Before L. HAND, SWAN and CHASE, Circuit Judges.

## L. HAND, Circuit Judge.

This is an appeal from judgments of conviction against the accused, Luck and Penn, for conspiring to transport kidnapped persons in interstate commerce. § 408c of Title 18, U.S.C.A. Penn pleaded guilty and went before the grand jury, where he made a lengthy statement under examination by the district attorney. Among other things he said that he and Luck had discussed from time to time the kidnapping of the children of wealthy persons living in the neighborhood. This testimony was enough to support a finding that they had actually agreed to kidnap; not only had they selected certain victims by name, but they hovered about the home of one, prepared to seize him had a favorable opportunity offered. That they had agreed upon taking any of those seized outside the State of New York did not, however, appear; Penn testified indeed that they had discussed two places which might be satisfactory, Waterbury, Connecticut, and Pinewald, New Jersey; but unless the jury might find from what he said that they had agreed upon one of these, there was no evidence in the case to supply the necessary element of transportation in interstate commerce.

As to Waterbury there can be no doubt. The most that can possibly be said is that they went there prospecting for a place to hide their captives and found it unsuitable; the testimony not only is insufficient to show that they had so agreed, but it positively forbids any such conclusion. The evidence is stronger as to Pinewald, but not strong enough. After finding Waterbury unsuitable, Luck suggested to Penn Pinewald where his family had owned property, which he thought had many advantages, such as a good lookout and the like. They discussed this, thought it promising, and started to go there to examine the terrain as they had examined Waterbury. As they had at that time no motor car they had to depend upon being taken up by others, and after waiting for a while in the cold without success, they abandoned the trip. Later they again talked about going there, but nothing came of it and they never went. Luck had a blueprint of the property which they considered together, and he at one time sketched upon a sheet of paper in his possession a route from Westchester County to New Jersey, but it was not proved that he had ever even showed this to Penn. Penn's further testimony as to their discussions of Pinewald as a hiding place is too long to quote; we have examined it with care and we are satisfied that it gives no basis for holding that they had ever come to any actual agreement upon it as the place to which they were to take their captives.

Thus the case at best was no more than that, although they had agreed to kidnap, they had not settled upon any place where they should conceal those kidnapped, and especially that they had not settled that they should take them outside the state. It was necessary for them to agree upon that; § 408c is explicit, it is a corollary of § 408a, which makes it a crime to transport a kidnapped person in interstate commerce. Men do not conspire to do that which they entertain only as a possibility; they must unite in a purpose to bring to pass all those elements which constitute the crime. The accused never went so far as to this vital element of the crime, and an acquittal should have been directed.

In what we have said we have assumed that Penn's grand jury testimony is to be regarded as part of the record in Luck's case, as it certainly was in Penn's own. It was not enough, and none of the other evidence against either of the accused supplied the lacking element. We have already mentioned the map of the route found in Luck's possession; even if Luck had shown it to Penn it would not have proved more than that they were discussing Pinewald. The testimony of the other witnesses did not help; indeed one of them, Joy, said that, when Luck tried to induce him to join he wished to avoid any violation of federal law by not taking those kidnapped outside the state.

Judgments reversed.