**UNITED STATES of America,**
**Appellee,**

v.

**Glenn Walter Alexander DeLaMOTTE,**
**Appellant.**

**No. 71, Docket 33944.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 9, 1970.

Decided Nov. 10, 1970.

Certiorari Denied Feb. 22, 1971.

See 91 S.Ct. 910.

Jay Goldberg, New York City, for appellant.

F. Mac Buckley, Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty., D.Conn., of counsel), for appellee.

Before LUMBARD, Chief Judge, and MOORE and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from conviction of kidnapping and interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. §§ 1201(a) and 2312, on trial to the jury in the United States District Court for the District of Connecticut,

William H. Timbers, Chief Judge, raising questions of the scope of the Lindbergh Act and trial error. We find no error and affirm the judgment.

On September 2, 1966 appellant and two accomplices, Charles Jackson [1] and John Walsh, traveled from New Jersey to the Schick Safety Razor Company plant in Milford, Connecticut for the purpose of hijacking a truck which was transporting a cargo of razor blades from the Milford plant to West Haven. The three men followed the truck as it left the plant. A short distance down the road, when the truck stopped at a traffic light or stop sign, Jackson left the car and entered the cab of the truck from the passenger side, and while pointing a revolver at the driver, he instructed him to pull off the road and stop. Jackson then ordered the driver to get out and walk back to the defendant's car which had pulled up behind the truck. At the same time, appellant left the car and entered the cab of the truck. The driver testified that he did not see appellant at any time. Jackson and Walsh then took the driver from Milford to a wooded area near Alpine, New Jersey where they tied him to a tree. After they had left, the driver quickly was able to free himself and reported the incident to a Hackensack, New Jersey police officer. Appellant was said to have driven the truck away and disposed of the cargo. The empty truck was recovered several days later on a street in Queens. Jackson, Walsh and the appellant met later in the afternoon of the same day in the garage in Hoboken from which they had set out that morning.

There were two eyewitnesses to the crime, Walter Valites who had been driving down the same street, and Leslie Buswell whose office was directly across the street from the spot where the truck pulled over to the side of the road. Valites testified that he had seen a Negro male running up to the truck as it was stopped at the light and had also noticed two men in the car. Buswell saw two men get out of the truck and walk back to the car, and at the same time he saw one man walk from the car to the truck and then drive it away. Neither witness was able to identify the appellant as one of the persons involved. The truck driver did identify both Walsh and Jackson as the men who accompanied him to New Jersey, but he did not identify appellant.

The only evidence implicating appellant was that of Jackson who appeared as a witness for the government after he had been convicted in a jury trial of the same crimes and sentenced to 25 years on the kidnapping count and 5 years on the Dyer Act count. The issues raised in the appeal center around Jackson's testimony. The appellant denies that he participated in the crime in any way.

█ The first point raised by appellant is that Judge Timbers failed fairly and accurately to summarize the evidence for the jury in that he did not mention the fact that neither of the eyewitnesses was able to identify the appellant. Appellant further argues that since the witness Valites positively stated that DeLaMotte was not the man he had seen walk from the car to the truck, it was essential that this be included in the court's summation. The record on whether Valites was positive on this point is somewhat unclear.[2] We cannot say that the judge was bound to agree with appellant's interpretation or single out this testimony for inclusion in his summary.

This court recently reiterated the applicable standards to be applied by the trial judge in summarizing the evidence

1. See United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, (1968), a companion case.

2. By the Court
   Q. Let me ask you, if I may, Mr. Valites, are you able to tell these jurors one way or the other as to whether the individual here identified, the Defendant DeLaMotte, was or was not one of the men in that car? A. I would say no, because of the description that I've given of what appeared not a dark or not a light, but a somewhere in between, a tan or light brown. This gentleman appears looking from here much lighter complected than at that particular time.
   (R. 28–29 April 10) (App. 40–41.)

in United States v. Tourine, 428 F.2d 865 (2d Cir. July 29, 1970).

> The trial judge in a federal court may summarize and comment upon the evidence and inferences to be drawn therefrom, in his discretion. This does not mean that he must include every scrap of evidence as if the jury were dependent upon the court's summation alone as the basis for its deliberations. * * * The purpose of such summation and comment is to assist the jury in winnowing out the truth from the mass of evidence, much of it conflicting, and perhaps placed out of focus by different claims concerning its meaning and interpretation by the arguments of the parties. So long as the trial judge does not by one means or another try to impose his own opinions and conclusions as to the facts on the jury and does not act as an advocate in advancing factual findings of his own, he may in his discretion decide what evidence he will comment upon. His fairness in doing so must be judged in the context of the whole trial record, particularly the evidence and the arguments of the parties. [at 869.]

Judge Timbers reminded the jurors at least 13 times throughout the proceedings that they were the finders of fact who must exercise their own judgment and not take what the court had said without further deliberation of their own. The court's failure to include mention of the eyewitnesses' statements which were at best equivocal was not prejudicial under the above standard.

The second point raised by appellant is that although the transportation of the truck driver from Connecticut to New Jersey literally falls within the requirements of the kidnapping statute, it was really an integral part of another crime (i. e., the hijacking), and that in light of the legislative history of the so-called Lindbergh law, this court should undertake to limit its application in situations such as the present case. Appellant relies on some general observations on the genesis of the Act in Chatwin v. United States, 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1952).

> This statute was drawn in 1932 against a background of organized violence. * * * Kidnapping by that time had become an epidemic in the United States. Ruthless criminal bands utilized every known legal and scientific means to achieve their aims and to protect themselves. * * * Victims were selected from among the wealthy with great care and study. Details of the seizures and detentions were fully and meticulously worked out in advance. Ransom was the usual motive. * * * 326 U.S. at 462–463, 66 S.Ct. at 236–237.

Otherwise, however, we have found no federal authority to support appellant's contention on this point. There are some New York and California decisions interpreting similar state statutes which have attempted to set such limitations based on those courts' reading of legislative history. The most notable of these is People v. Levy, 15 N.Y.2d 159, 256 N.Y. S.2d 793, 204 N.E.2d 842 (1965), where the New York Court of Appeals commented:

> It is unlikely that these restraints (occurring for example in robbery), sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words. 256 N.Y.S.2d at 796, 204 N.E. 2d at 844.

However, such a narrowing of the scope of the kidnapping statute is a legislative rather than a judicial function. The Congress did not specifically limit the statute to ransom cases and may well have considered the need for federal assistance to the states in preventing interstate transportation of victims kidnapped, bound, transported and detained for other reasons than ransom. More-

over, there was here no momentary detention in the course of a holdup, where it may be doubtful that a state legislature intended to multiply offenses, but an extended, planned detention to enable the hijackers to transport interstate and conceal the truck cargo. We think the Act properly applied to the circumstances of this case.

■ Appellant next contends that there was insufficient evidence to establish that he aided or abetted Jackson and Walsh in the crime of kidnapping. The law is clear that criminal intent must exist in the minds of both the principal and the aider or abetter (United States v. Penn, 131 F.2d 1021 (2d Cir. 1942)), although the accessory is liable for any criminal act which, in the ordinary course of events, was the natural or foreseeable consequence of the crime that he advised or commanded. Here we think the detention and interstate transportation were shown to be reasonably foreseeable.

■ That these accomplices, who had come from New Jersey to southern Connecticut and planned to hold the driver for sufficient time to transport to New York and dispose of the cargo, would have the driver with them as they returned to New Jersey was surely reasonably foreseeable by DeLaMotte as he took part in the planned hijacking and transportation of the cargo.

■ Appellant next contends that it was prejudicial error to permit Agent Conley of the F.B.I. to testify as to the statement given him by Jackson shortly after his arrest. The trial court allowed this statement to come in on the theory that once Jackson's motives for testifying (to obtain bail pending appeal and reduction of sentence), were questioned on cross-examination, then the government is allowed to rehabilitate its witness by showing that prior consistent statements were made by the witness prior to the time that the alleged motives for falsification arose. (McCormick, Law of Evidence, 1954 ed., p. 108.) Appellant contends first, that the government failed to show that these same motives (i. e., if you cooperate you will get better treatment) did not exist at the time of the statement as well as at trial. This contention has no merit for as this court said in United States v. Grunewald, 233 F.2d 556, 566 (2d Cir. 1956); rev'd on other grounds, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957):

> Otherwise, it would never be proper to rehabilitate a witness by proof of prior consistent statements in cases where numerous impeaching circumstances were shown to exist at the time of the trial but where there may be found a theoretical possibility that the witness might have been motivated by one of them at the time of making the prior consistent statement. 233 F.2d at 566.

■ Appellant next contends that while prior consistent statements are admissible for corroboration in these circumstances, Agent Conley was allowed to testify as to specifics in the statement which were *inconsistent* with Jackson's testimony at trial, namely that DeLaMotte had told Jackson to hold the driver "for a couple of hours" and that Jackson had given the F.B.I. DeLaMotte's unlisted telephone number (to show Jackson was a close acquaintance of appellant). Appellant argues that since the jury was called upon to determine whether appellant knew or foresaw that the driver would be taken across a state line, allowing Agent Conley to testify as to the phrase "a couple of hours" when Jackson had not testified at the trial that appellant had said this was highly prejudicial. This phrase, however, was not inconsistent with Jackson's trial testimony on page 32 of the appendix, that he was to hold the driver until DeLaMotte could take the truck where he was going.

■ Appellant also contends that it was error to allow Agent Conley to testify as to these prior allegedly inconsistent statements because such testimony violated appellant's right to confrontation under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Nothing, however, prevented appellant's counsel from cross-examining

Jackson on these points, so this claim has no basis.

Finally, appellant contends that it was reversible error for the trial judge not to include the cautionary instruction normally required in these circumstances as to the purposes for which Jackson's prior conviction for the same crime was admitted (i. e., as going only to Jackson's credibility). Although appellant's counsel requested no such cautionary instruction and did not object to the court's charge on this point, as required under Rule 30 of the Federal Rules of Criminal Procedure, he contends that the effect of allowing the jury to decide the case without the cautionary instruction was sufficiently prejudicial to come within the "plain error" doctrine of Rule 52(b).

The instruction would undoubtedly have been given if requested, but we do not find its omission plain error. Jackson's testimony had made abundantly plain Jackson's role in the affair, and the conviction added nothing which appeared at the time sufficiently prejudicial to call for such a request. We are not now persuaded that it was prejudicial. Judgment affirmed.