**UNITED STATES of America, Appellee,**

v.

**Amaury Edward RAMIREZ, also known as "Ronnie," Defendant–Appellant.**

**No. 1820, Docket 92–1060.**

United States Court of Appeals, Second Circuit.

Argued July 14, 1992.

Decided Aug. 18, 1992.

James A. Goldston, Asst. U.S. Atty. for the Southern District of New York, New York City (Otto G. Obermaier, U.S. Atty. for the Southern District of New York, John W. Auchincloss II, Asst. U.S. Atty. for the Southern District of New York, of counsel), for appellee.

Joseph R. Giaramita, Jr., Brooklyn, N.Y., for defendant-appellant.

Before: ALTIMARI, MAHONEY, and WALKER, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Amaury Edward Ramirez appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York, Nicholas Tsoucalas, *Judge,** on

* Judge of the United States Court of International Trade, sitting by designation.

January 31, 1992 following a two-day jury trial. Ramirez contends, *inter alia,* that the district court's failure to instruct the jury not to consider the guilty plea of a codefendant government witness in deciding Ramirez' guilt or innocence constituted reversible error. We agree, and accordingly reverse the judgment of conviction and remand.

## Background

Ramirez and his codefendant Simon Turbides were indicted on six counts of drug-related offenses: conspiracy to possess with intent to distribute cocaine and cocaine base within 1,000 feet of a school in violation of 21 U.S.C. § 846 (1988); three related possession counts (one of which named only Ramirez) involving violations of 21 U.S.C. §§ 812, 841, and 860(a) (1988 & Supp. II 1990); one count of using or carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (1988 & Supp. II 1990); and one count against Turbides of maintaining apartment 32A, 65 East 175th Street, Bronx, New York for the purpose of manufacturing and distributing cocaine and cocaine base in violation of 21 U.S.C. § 856(a) (1988). Turbides eventually pled guilty to all the counts against him except the two possession counts.

This case arose out of a search warrant executed by agents of the Bureau of Alcohol, Tobacco and Firearms ("BATF") at apartment 32A, 65 East 175th Street in the Bronx on May 22, 1991. The BATF agents seized cocaine base packaged in vials, a plastic bag containing cocaine, narcotics paraphernalia, and a loaded firearm from a concealed hole in the floor of the apartment and from the dining room table. A receipt for a beeper in the name of "Ronnie Ramirez" and letters addressed to Ramirez were also seized from the apartment.

Immediately prior to executing the warrant, a BATF agent observed Ramirez and two other individuals leave apartment 32A, walk across the hall, and enter apartment 34A, leaving the latter apartment's door

open. After securing apartment 32A, the agents entered apartment 34A, where Ramirez, a teenage boy, and a child were watching television. The agents arrested Ramirez, identified as the individual who had just left apartment 32A, and seized a beeper that he was wearing.

At Ramirez' trial, in addition to testimony by BATF agents concerning the above events, Turbides testified on behalf of the government. Turbides stated that Ramirez conspired with Turbides and others to sell cocaine and cocaine base from apartment 32A. Turbides also testified that Ramirez was a member of the conspiracy from the end of 1989 until his arrest on May 22, 1991, and specifically that Ramirez sold cocaine and crack; helped prepare crack for sale, including cutting it and placing it into vials; and kept records of sales. He further testified that he had signed a cooperation agreement with the government and entered a guilty plea to three of the counts contained in the indictment.

On cross-examination, Turbides conceded that he made the hole in the floor of apartment 32A, that the lease to the apartment was in his name, that he paid the rent for the apartment, that he purchased the seized firearm, and that he cooked crack "a lot" of times. Ramirez attempted to question Turbides concerning altercations between Turbides and Ramirez' sister, to whom Turbides was married, but the prosecution objected to these questions and the court sustained the objections.

Prior to the case being submitted to the jury, Ramirez requested that the jury be instructed not to consider Turbides' guilty plea in assessing the guilt or innocence of Ramirez. He cited *United States v. Gibbons*, 602 F.2d 1044 (2d Cir.), *cert. denied*, 444 U.S. 950, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979); *United States v. Kelly*, 349 F.2d 720 (2d Cir.1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); and 1 Leonard B. Sand *et al.*, *Modern Federal Jury Instructions* ("Sand") Instruction 7–10, ¶ 7.01 at 7–43 (1992) in support of the request. The court refused Ramirez' request, and Ramirez took an exception to that ruling.

The jury found Ramirez guilty of all counts against him except one possession count to whose dismissal the government consented at trial. The district court sentenced Ramirez to 295 months imprisonment, an eight-year term of supervised release, and $200 in mandatory special assessments.

This appeal followed.

### Discussion

Ramirez raises numerous issues on appeal. We need only address his contention that the trial court improperly refused his request to charge the jury concerning Turbides' guilty plea, because that claim is dispositive.

At trial, Ramirez and the government submitted written requests, pursuant to Fed.R.Crim.P. 30, that the court instruct the jury on the law as set forth in the requests. The trial court declined to issue Ramirez' request number four, based upon Sand, Instruction 7–10, which states:

> You have heard testimony from a government witness who pled guilty to charges arising out of the same facts as this case. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that a prosecution witness pled guilty to similar charges. That witness' decision to plead guilty was a personal decision about his own guilt. It may not be used by you in any way as evidence against or unfavorable to the defendant on trial here.

Ramirez objected to the court's refusal to include the instruction as part of the jury charge, and on appeal contends that the court's denial constitutes reversible error. Although it took no position on the propriety of the instruction at trial, the government concedes in its brief on appeal that "it would have been appropriate and advisable for the District Court to give such an instruction." The government argues, however, that "the District Court's contrary decision does not warrant reversal here." We disagree.

This court has clearly stated that when a jury has been informed that a codefendant has pleaded guilty to a crime charged against the defendant on trial, the trial judge should instruct the jury that they may not consider that guilty plea as evidence of the defendant's guilt. *Gibbons,* 602 F.2d at 1048; *United States v. Toliver,* 541 F.2d 958, 967 (2d Cir.1976); *United States v. Light,* 394 F.2d 908, 914–15 (2d Cir.1968); *Kelly,* 349 F.2d at 767–68. Thus, we conclude that the district court erred in refusing to give the requested instruction. A ruling of reversible error must follow unless we conclude that there existed " 'no reasonable possibility of prejudice.' " *United States v. Mackey,* 915 F.2d 69, 75 (2d Cir.1990) (quoting *United States v. Fontanez,* 878 F.2d 33, 38 (2d Cir.1989)); *see also* 3A Charles A. Wright, *Federal Practice & Procedure* § 851, at 294 (2d ed. 1982) (reversible error if error "may have been prejudicial").

In this case, it is clear that the court's error may have prejudiced the defendant. The only evidence of Ramirez' participation and role in the conspiracy and substantive crimes was provided by Turbides' testimony. Without that testimony, the remaining evidence is rather paltry—Ramirez was seen leaving apartment 32A prior to the execution of the search warrant, some of Ramirez' papers were in the apartment, and Ramirez possessed a beeper. Thus, Turbides' testimony was the substance of the case establishing that Ramirez was guilty of the crimes charged in the indictment.

In its brief on appeal, the government suggests that our decision in *United States v. DeLaMotte,* 434 F.2d 289 (2d Cir.1970), *cert. denied,* 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971), should guide our determination of the prejudice suffered by Ramirez. In *DeLaMotte,* we held that it is not plain error for a trial court not to give such a limiting instruction when the testimony clearly established the codefendant's role in the affair, and "the conviction added nothing which appeared at the time sufficiently prejudicial to call for such a request." *Id.* at 294. This is not a plain error case, however, because Ramirez

made the appropriate request and objection at trial. The standard for reversal on account of plain error is very stringent. As we stated in *United States v. Benitez,* 920 F.2d 1080 (2d Cir.1990): " 'Only if serious injustice was inflicted upon a defendant, or if he was convicted in a manner inconsistent with fairness and integrity of judicial proceedings, will we exercise our power under the plain error rule.' " *Id.* at 1088 (quoting *United States v. Bryant,* 480 F.2d 785, 790 n. 3 (2d Cir.1973) (citing *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936))). Because *DeLaMotte* addressed plain error, it is clearly distinguishable and does not control our determination.

The government also relies upon *United States v. Freeman,* 302 F.2d 347 (2d Cir. 1962), *cert. denied,* 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316 (1963), to contend that other factors may outweigh the failure to give a cautionary instruction concerning an accomplice witness' guilty plea. In *Freeman,* the defendant objected to testimony by a coconspirator concerning her guilty plea, and we responded:

There may be circumstances where, on proper request of the defense, the trial judge should limit, or even bar such testimony, or allow it only under cautionary instructions because the prejudice to the defendant of the witness' admission of crime implicating the defendant would outweigh the advantages of a full disclosure of the witness' criminal background. Here we find that there was no likelihood of prejudice.

*Id.* at 350.

The finding as to lack of prejudice is hardly surprising. In addition to the testimony of the coconspirator, "four agents of the Bureau of Narcotics, a special employee of the Bureau, . . . and a New York City police detective offered evidence of Freeman's guilt." *Id.* at 348. In addition to the radically different testimonial setting, *Freeman* touched only in the most tangential way upon the issue of a curative jury instruction, in the course of addressing a contention that the coconspirator's testimony should not have been admitted in the

first place. In sum, *Freeman* offers little assistance to the resolution of the issue that must be decided in this case.

The government also calls to our attention cases in other circuits ruling that in the absence of showing of actual prejudice, it was not reversible error for a trial court to decline to give the cautionary instruction at issue herein. *See United States v. Braxton,* 877 F.2d 556, 565 (7th Cir.1989); *United States v. Schmaltz,* 562 F.2d 558, 560 (8th Cir.) (per curiam), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 315 (1977). These cases, however, are significantly different from the one that we must decide.

In *Braxton,* the government's direct case was presented by an undercover officer who made the narcotics purchase from the defendant, and the accomplice testified only in rebuttal of the defendant's alibi defense. 877 F.2d at 558–59. The court concluded that the defendant "was not prejudiced by the introduction of the [accomplice's guilty] plea even without an instruction," although noting that "the better practice is to give a cautionary instruction." *Id.* at 565. In *Schmaltz,* there was no intimation that the accomplice who pled guilty played any role in the prosecution's case, which appears to have been presented primarily or exclusively by narcotics agents, *see* 562 F.2d at 559–60, and there was similarly no indication that a cautionary instruction was requested by the defense. *See id.* at 560. Other cases cited by the government are similarly inapposite.

The government also argues that several factors negate any prejudice that may have resulted from the district court's decision not to give the requested instruction, including: (1) the court's instruction regarding the use of Turbides' guilty plea to assess his credibility;[1] (2) the government's proper purpose in eliciting testimony regarding that plea; and (3) defense counsel's extensive and repeated reference to Turbides' guilty plea. We disagree.

The district court's correct instruction concerning credibility assessment did not protect Ramirez from the possibility that the jury would make an improper determination as to Ramirez' guilt based upon Turbides' plea to crimes charged in the indictment. Furthermore, although it was proper for the government to bring out Turbides' guilty plea on direct examination because it might have impaired his credibility if it was first elicited during cross-examination, *see United States v. Cosentino,* 844 F.2d 30, 33 (2d Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988); *United States v. Borello,* 766 F.2d 46, 57 (2d Cir.1985), it was equally proper for Ramirez to refer to Turbides' guilty plea in an attempt to impeach his credibility. This appropriate use of the guilty plea by both parties should not penalize Ramirez.

It is clear that in many cases, a failure to give the instruction requested in this case would not result in significant prejudice, and therefore would constitute harmless error. In this case, however, the instruction was explicitly requested; the request was accompanied by the citation of governing Second Circuit authority; an exception was taken on the record to the denial of the request; and the accomplice witness' testimony was virtually the government's entire case against Ramirez. In sum, if this record does not establish reversible error with respect to the refusal to give the cautionary instruction, it is hard to imagine any that would.

■ We note one other matter that was argued on appeal and may arise again in the event of a retrial. During cross-examination of Turbides, Ramirez asked whether Turbides had ever broken the nose, or

---

1. As part of its charge, the trial court instructed the jury as follows:

    [B]ecause of the possible interest an accomplice may have in testifying, his testimony should be scrutinized with special care and caution.... You must determine the credibility of an accomplice.... It should be pointed out that the witness alleged to be an accomplice testified prior to his being sentenced on certain charges, and with an expectation that his testimony and cooperation would be brought to the attention of the sentencing judge. These are factors to be considered by you in weighing the witness's credibility.

blackened the eyes, of Ramirez' sister, to whom Turbides was married. Objections to these questions were sustained without any discussion of the basis for the court's rulings, and Ramirez did not thereafter pursue this line of inquiry. We need not attempt any definitive ruling on this sparse record as to the events of the prior trial. We note, however, that in any retrial, Ramirez would clearly be entitled to appropriate cross-examination as to any bias on the part of Turbides toward Ramirez, *see Delaware v. VanArsdall,* 475 U.S. 673, 678–80, 106 S.Ct. 1431, 1434–36, 89 L.Ed.2d 674 (1986); *United States v. Abel,* 469 U.S. 45, 50–52, 105 S.Ct. 465, 468–69, 83 L.Ed.2d 450 (1984); *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), including the existence of any enmity between them. *See Wynn v. United States,* 397 F.2d 621, 623–24 (D.C.Cir.1967); *Greatreaks v. United States,* 211 F.2d 674, 675–77 (9th Cir.1954).

## Conclusion

The judgment of conviction is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

