UNITED STATES of America, Appellee and Cross–Appellant,

v.

Roger J. HOURIHAN, Defendant–Appellant and Cross–Appellee.

Nos. 1548, 1605, Dockets 94–1531, 94–1532.

United States Court of Appeals, Second Circuit.

Argued May 22, 1995.

Decided Sept. 13, 1995.

---

16. For the list of cases affected by our ruling, *see*   *supra* note 2.

Bruce R. Bryan, Syracuse, NY (Amdursky, Duell & Pelky, of counsel), for defendant-appellant and cross-appellee.

John G. Duncan, Asst. U.S. Atty., Syracuse, NY (Thomas J. Maroney, U.S. Atty., of counsel), for appellee and cross-appellant.

Before: VAN GRAAFEILAND, KEARSE and JACOBS, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Roger J. Hourihan (hereinafter "defendant") appeals from a judgment of the United States District Court for the Northern District of New York (Scullin, J.) convicting him of abusive sexual contact, 18 U.S.C. § 2244(b), and aggravated sexual abuse, 18 U.S.C. § 2241(a)(1). The Government cross-appeals from defendant's sentence of 27 months imprisonment. We affirm the conviction but remand for resentencing.

The facts, which we view in the light most favorable to the Government, are as hereinafter set forth. During the summer of 1993, defendant and Carla Davis worked in the commissary of the Griffiss Air Force Base in Rome, New York, defendant as a meat cutter, Davis as deli manager. Although their relationship originally was cordial, in June defendant began to call Davis "sweetie," "baby," and "honey," and to "hit [her] on the butt" as she walked by. Such conduct would occur "[a]ll the time, just about every day." When she told him to "knock it off," he would just smirk. She complained to her supervisor, Debra Nittiskie, in the middle of June and again towards the end of that month. Nittiskie asked Davis if she wanted Nittiskie to do anything about the problem, but Davis said "no," she would take care of it herself. Although Davis was afraid of the defendant, she continued to tell him to stop.

On June 29, 1993, when Davis went into the main supply room of the commissary to obtain supplies, defendant followed her in. He started kissing and rubbing her, putting his hands up her shirt and playing with her breasts. She kept trying to pull away and telling him that she wanted to go, but he would not stop. He kept saying that all he needed was about five minutes of her time and then he'd let her go. He undid her pants and put his hand down the front of them. She pulled his hand away and told him to "knock it off," but he yanked her hands back and continued his encroachments upon her person. He then proceeded to undo his own pants and expose his penis. He grabbed her hand and tried to get her to hold his exposed member. When she refused to do so, he put his hands on her shoulders and tried to get her to kneel to perform oral sex, but she would not. Fortunately for Davis, defendant at that point was paged for a phone call. When he went to answer the call, she was able to leave. However, rather than returning to work, she slipped out the back door and went home.

A second incident occurred on July 2, 1993. Davis went into the back office of the commissary to make a phone call. Defendant began to play with her breasts while she was on the phone. When she completed her call, she again told him to leave her alone. This time, she did go back to work.

On July 7, 1993, Davis complained to Nittiskie. On July 8, 1993, she spoke to the police who then interrogated defendant. He gave a written statement to the effect that Davis had become "friendly" towards him in mid-June and started kissing him when they were in the back room, during which time he would squeeze her buttocks. He described a sexually flirtatious atmosphere at the commissary and denied exposing himself. This statement also mentioned another co-worker with whom he was "flirtatious," Ida Getbehead.

On July 24, 1993, defendant gave the police a second written statement in order to "clarify" his first. He admitted that a sexual encounter took place in the storage room of the commissary on June 29, 1993. According to defendant's statement, the encounter consisted of consensual kissing and fondling. Defendant admitted to exposing his penis in the hope that Davis would perform oral sex. However, he claimed that when she refused, the encounter came to an end.

On October 7, 1993, defendant was charged in a three-count indictment with sexual offenses against both Davis and Getbehead. On defendant's motion, the charge concerning Getbehead was severed on the ground of undue prejudice. The remaining counts involving Davis charged abusive sexual contact (Count I) and aggravated sexual abuse (Count III).

After the Government concluded its presentation of the above-described facts on the trial and rested, defendant moved to prohibit

the Government from cross-examining him concerning an eight-year-old conviction for possession of stolen property. The motion was denied.

Defendant testified on his own behalf. He told the jury that by June of 1993 his relationship with the victim had become somewhat sexual, consisting mainly of caressing and kissing in the back room. According to defendant, on June 29 he and Davis engaged in consensual sexual contact. Although he expected her to perform oral sex on him, he claimed that he acquiesced when she refused. He insisted that he never forced her to engage in sexual relations with him.

Defendant also testified that in 1986 he had an alcohol problem and engaged in shoplifting. He admitted to stealing property and trying to resell it, but stated that he was caught by the police, cooperated fully, and ultimately pleaded guilty. He was later granted a Certificate of Relief from Disabilities from the State of New York.

On cross-examination, defendant was questioned about his statements to the police. These included admissions of his sexual conversations and contact with Getbehead, which admissions had not been redacted despite the fact that the charges concerning Getbehead had been severed. The Government also questioned defendant about the underlying facts of his prior conviction, which were of a more serious nature than defendant had led his attorney to believe. Finally, on redirect, defendant volunteered testimony about allegations of sexual abuse made by Getbehead.

## DISCUSSION

■ Defendant contends on appeal that the evidence was insufficient to support the verdict that he attempted to cause Davis to engage in a sexual act, i.e., "contact between the mouth and the penis" (18 U.S.C. § 2246(2)(B) as proscribed in 18 U.S.C. § 2241(a)(1)). In challenging the sufficiency of the evidence, the defendant faces "an uphill battle," *United States v. Jones,* 30 F.3d 276, 281 (2d Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 602, 130 L.Ed.2d 513 (1994), and "bears a very heavy burden," *United States v. Rivera,* 971 F.2d 876, 890 (2d Cir.1992)

(internal quotations omitted), because the evidence must be viewed in the light most favorable to the Government, with all reasonable inferences drawn in favor of the verdict, *United States v. Amato,* 15 F.3d 230, 235 (2d Cir.1994). Moreover, in reviewing the sufficiency of the evidence, an appellate court asks "not whether [it] believes that the evidence at trial established guilt beyond a reasonable doubt," *United States v. Brown,* 937 F.2d 32, 35 (2d Cir.), *cert. denied,* 502 U.S. 917, 112 S.Ct. 323, 116 L.Ed.2d 264 (1991), but whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' " *Amato,* 15 F.3d at 235 (emphasis in original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

■ Defendant argues that he obviously did not attempt to force Davis into a sexual act because, if he had wanted to force her, he could have, given his size and strength as compared to hers. However, the jury reasonably could have believed that defendant did not complete the act he attempted on June 29, 1993 only because he was being paged and would have been caught in the act had he not ceased immediately. To be guilty of an attempted crime, one need only intend to commit the crime and take a "substantial step" towards its completion. *See United States v. Rosa,* 11 F.3d 315, 337 (2d Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). "A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *United States v. Manley,* 632 F.2d 978, 987 (2d Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981). Here, the jury could find that defendant took substantial steps towards forcibly committing a sexual act (i.e., fellatio) with Davis. Although a phone call caused defendant to abandon his efforts, he nevertheless could be found guilty of attempt. *See United States v. Jackson,* 560 F.2d 112, 118, 120–21 (2d Cir.), *cert. denied,* 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977).

■ Defendant next complains that the district court should not have admitted evi-

dence of complaints made by Davis. Ordinarily, we review a district court's evidentiary rulings for abuse of discretion. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). However, when a defendant fails to object at trial, we review only for plain error. Fed.R.Crim.P. 52(b); *United States v. Inserra*, 34 F.3d 83, 90 n. 1 (2d Cir.1994). Before trial, the district court ruled that the Government would be permitted to introduce evidence that Davis had complained about defendant to her supervisor on more than one occasion, but would not be permitted to introduce evidence as to the contents of the complaints. "No 'serious injustice was inflicted upon ... defendant'" in this ruling. *See United States v. Ramirez*, 973 F.2d 102, 105 (2d Cir.1992) (quoting *United States v. Bryant*, 480 F.2d 785, 790 n. 3 (2d Cir.1973) (citing *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1963))). Indeed, defense counsel waived any objections he might have had:

> If [the court] were to allow the fact that [Davis] made a complaint, there would be no question that I will cross-examine on the nature of it.... That means I won't object. Because I would rather have, oh, yeah, Roger told me a dirty joke....

*See United States v. Yu–Leung*, 51 F.3d 1116, 1122 (2d Cir.1995).

Moreover, there was no prejudicial deviation from the court's ruling during the trial. Davis testified that she complained to Nittiskie about defendant on three occasions. She further testified that, on July 7, 1993, she did not provide Nittiskie with any details as to defendant's conduct. Nittiskie also testified that Davis had complained to her regarding the general nature of defendant's conduct on three occasions. On cross-examination, defense counsel brought out that Davis' second complaint (in the last week of June) was "completely unspecified." On redirect, the Government asked whether the first complaint (in the middle of June) was more detailed, and on recross, defense counsel brought out that the additional detail was merely that defendant had "made her feel uncomfortable," with no specifics as to what he did.

Defendant raises a number of issues concerning the use of his prior conviction. Defense counsel, apparently acting under the mistaken belief that the prior offense was only a theft of clothing, attempted to blunt the prejudice that would result from the Government's disclosure of the conviction by disclosing the conviction in his own interrogation. In fact, the conviction involved shoplifting for the purpose of resale of meat and groceries from the store where defendant worked. The Government was aware of both the underlying facts and defense counsel's apparent misunderstanding, yet said nothing.

■ Defendant argues first that the Government did not fulfill its disclosure obligations under Fed.R.Crim.P. 16(a)(1)(B). That rule requires the Government to disclose a "copy of the defendant's prior criminal record, if any." Defendant, however, "respectfully contends that the Government was not only obligated to furnish the fact of [defendant's prior] conviction, but also any other information that the Government had in its possession, custody, or control, including information on the underlying facts of [the] conviction." He cites no authority for placing such an intolerable burden on the prosecution, and we could find none. Rule 16(a)(1)(B) speaks only of defendant's criminal record. *See United States v. Trejo–Zambrano*, 582 F.2d 460, 465 & n. 3 (9th Cir.), *cert. denied*, 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 682 (1978).

Defendant also argues that the Government's failure to correct defense counsel's misunderstanding of the facts underlying that conviction amounted to prosecutorial misconduct—again, without citing any authority. We find no error here. If a defendant deems it in his own interest to mislead his attorney, the prosecutor is not required to inject himself into this confidential relationship.

■ Defendant next argues that, because Fed.R.Crim.P. 16(a)(1)(A) requires the Government to disclose "any relevant written or recorded statements made by the defendant ... within the possession, custody, or control of the government," the Government should have provided him with a copy of his

employment application to the commissary. Apparently, this application contained information that, if investigated, would have led to the disclosure of bad acts against other employers. Assuming for the sake of argument that defendant's application for employment constituted such a statement, the prosecutor's failure to furnish a copy of the application cannot be said to have caused any substantial prejudice to the defendant since the information contained therein was furnished defense counsel in other documents. Under Rule 16(a)(1)(A), a new trial will be required only if the defendant can show that the failure to disclose caused him substantial prejudice. *See United States v. Matthews,* 20 F.3d 538, 550 (2d Cir.1994).

Defendant contends that evidence of his eight-year-old felony conviction should not have been admitted because of its potential for prejudice. We review the district court's ruling on this issue for abuse of discretion. *See United States v. Hawley,* 554 F.2d 50, 53 (2d Cir.1977). Defendant's principal argument is that the remoteness in time makes the crime less probative, particularly since defendant had no subsequent criminal history. Because eight years falls within the ten-year limitation period of Fed.R.Evid. 609(b), the conviction was admissible as long as its probative value outweighed its prejudicial effect. *See* Fed.R.Evid. 609(a)(1). The district court determined that it did. This was not an abuse of discretion.

Defendant also contends that his conviction should not have been admitted under Fed.R.Evid. 609(c), which states that

[e]vidence of a conviction is not admissible under this rule if ... the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent [felony].

Defendant argues that his Certificate of Relief from Disabilities qualifies under this rule. This Court has held to the contrary. *See United States v. DiNapoli,* 557 F.2d 962, 966 (2d Cir.), *cert. denied,* 434 U.S. 858, 98 S.Ct. 181, 54 L.Ed.2d 130 (1977).

Defendant next claims that the court erred in permitting the Government to elicit evidence concerning the charge involving Getbehead, the trial of which had been severed. The evidence consisted of defendant's statements to the police on July 8, 1993, and his testimony on the stand. In neither case was an objection raised, so we review only for plain error. Fed.R.Crim.P. 52(b); *Inserra,* 34 F.3d at 90 n. 1. In his statement to the police, defendant made no reference to any criminal allegations by Getbehead. He merely described consensual activities between the two in the context of a workplace in which flirtation and sexual innuendo were common.

Defendant's final claim is that he was denied effective assistance of counsel. He argues that counsel should have requested the court to instruct the jury, with respect to the charge of aggravated sexual abuse, 18 U.S.C. § 2241(a)(1), that it might find defendant guilty of abusive sexual contact, a "lesser-included offense." Defendant does not specify what lesser statutory offense should have been requested, describing it simply as abusive sexual contact. In determining when a lesser-included offense instruction is proper, we are instructed by the Supreme Court to apply the "elements test."

To determine when a lesser included offense instruction is appropriate under [Fed.R.Crim.P.] 31(c), a court must apply the elements test. *See Schmuck v. United States,* 489 U.S. 705, [716,] 109 S.Ct. 1443, [1450–51,] 103 L.Ed.2d 734 (1989). Under this test,

"one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c)."

*United States v. Mena,* 933 F.2d 19, 29 (1st Cir.1991).

In applying that test here, we find that the term "sexual act" is defined as "contact between the mouth and the penis." 18 U.S.C. § 2246(2)(B). However, defendant was not convicted of performing such a sexu-

al act, but of attempting to do so. "Sexual contact" on the other hand means

the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(3). The words "intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" are crucially significant. An attempt to perform a sexual act does not require such an intent. In short, sexual contact requires something that an attempted sexual act does not. Thus, the offense of abusive sexual contact was not encompassed within the parameters of the offense of attempted sexual abuse so as to constitute a lesser-included offense. Certainly, Hourihan's counsel could not be found guilty of ineffective assistance of counsel for failing to request that the trial court charge otherwise.

Finding no reversible error to invalidate the conviction, we turn now to the Government's claim of sentencing error. "[W]e review the district court's legal interpretation of the Sentencing Guidelines *de novo* and the district court's findings of fact for clear error." *United States v. Lagatta,* 50 F.3d 125, 127 (2d Cir.1995).

In the presentence report, the probation department calculated defendant's sentencing range as 108 to 135 months imprisonment. The district judge initially indicated that he intended to depart downward, but instead reduced the sentencing range by a different method. Characterizing the case as "atypical," the judge calculated defendant's sentence under U.S.S.G. § 2A3.4, the guideline for abusive sexual contact, rather than § 2A3.1, the guideline for aggravated sexual abuse. This led to a range of 21 to 27 months imprisonment. The court sentenced defendant to 27 months.

To reach this result, the district court relied on the instructions to the Guidelines' statutory index, which state that

[i]f, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, [the court may] use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted. (*See* § 1B1.2.)

U.S.S.G., Appendix A—Statutory Index, Introduction. The district court decided to apply these instructions based on its conclusion that

[w]hile the evidence in the case included some forcible conduct, and I believe it did, that force was force directed at sexual contact rather than a sexual act. The act of fellatio, I believe, was the act described in the evidence. So in my view of the evidence [the guideline concerning abusive sexual contact] would be the more appropriate guideline.

██ The district court's legal definition of fellatio is wrong—section 2246(2)(B) clearly states that fellatio is a sexual act. More importantly, the district court's decision to sentence based on its view of the evidence rather than the jury's is reversible error. "[A] guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." *United States v. Weston,* 960 F.2d 212, 218 (1st Cir.1992). The jury in this case was properly charged on the elements of the crime of attempt to commit aggravated sexual abuse. In convicting the defendant of this crime, the jury necessarily found, beyond a reasonable doubt, that the defendant had attempted to commit a sexual act by force. Since there was sufficient evidence to support the jury verdict, the district court's decision to sentence defendant for a lesser crime cannot be sustained.

Accordingly, we must remand for resentencing. We reject defendant's contention that the sentence should be affirmed because the district court could have reached the same result by downwardly departing. Defendant will have the opportunity to test the strength of his argument on remand.

The judgment of conviction is affirmed and the case is remanded for resentencing.