UNITED STATES of America, Appellee,

v.

Manuel HURTADO, also known as Jorge Vega, also known as Manolo, Defendant–Appellant.

No. 147, Docket 93–1667.

United States Court of Appeals, Second Circuit.

Argued Oct. 14, 1994.

Decided Feb. 16, 1995.

Rose Gill, Asst. U.S. Atty., S.D.N.Y., New York City (Mary Jo White, U.S. Atty., John W. Auchincloss, II, Asst. U.S. Atty., Paul Gardephe, Asst. U.S. Atty., on the brief), for appellee.

Christine E. Yaris, New York City (Thalia M. Bender, on the brief), for defendant-appellant.

Before: OAKES, KEARSE and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Manuel Hurtado ("Hurtado") was convicted, following a jury trial in the United States District Court for the Southern District of New York (DiCarlo, J., U.S.Ct. of Int'l Trade, sitting by designation), of a single count of conspiracy to distribute and possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 846.

On appeal, he contends that the district court committed a variety of errors warranting reversal of his conviction. His primary contention is that his constitutional rights were violated when he was compelled to wear prison clothing in court on the first day of trial. He also claims that the district court granted his request to represent himself without adequate inquiry; that he received ineffective assistance of counsel prior to trial; that the district court abused its discretion in declining to grant him extensions of time; that the district court erroneously failed to instruct the jury on entrapment; that the district court misunderstood its authority to depart downwardly; and that these alleged errors in combination deprived him of a fair trial. For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

On April 20, 1993, Hurtado was charged in a one-count superseding indictment with conspiring to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846. The indictment alleged that between November 1989 and July 21, 1992, Hurtado conspired with others to distribute heroin and cocaine. Specifically, the indictment alleged a series of overt acts, including several purchases of narcotics and the negotiation and attempted purchase of several kilograms of heroin and cocaine on July 21, 1992, the date of his arrest.

The trial commenced on May 10, 1993. At trial, the government produced evidence, through tape recordings and oral testimony, that Hurtado was actively involved in distributing narcotics over a substantial period of time. Mohammad Naser, a co-conspirator turned informant, testified that he sold Hurtado a total of approximately five kilograms of narcotics over the course of one and a half years. The government also alleged that on July 21, 1992, Hurtado sought to buy three kilograms of heroin from an undercover Drug Enforcement Administration agent. At that tape-recorded meeting, Hurtado discussed the proposed sale of heroin as well as his previous heroin-related activities. He stated that he had customers waiting to buy the three kilograms, that the price of heroin was fluctuating, that he used to sell roughly ten kilograms of heroin per week, that he had been in the narcotics business for fourteen years, and that he distributed heroin purchased from Naser on a regular basis. Hurtado also discussed the possibility of buying a large amount of cocaine from the undercover agent in the future. Hurtado was arrested immediately after giving the agent $20,000 cash as a down payment for the heroin. A subsequent search of his apartment revealed drug paraphernalia, business records corroborating Naser's testimony, cash, and a gun.

Although Hurtado was originally represented by counsel, the district court granted his request on the first day of trial to defend himself. In his defense, Hurtado stated that he first came into contact with Naser because his friend "Alex" owed Naser money. Hurtado claimed that he agreed to pay Alex's debt to Naser as a favor to Alex's wife. He testified that the $20,000 payment was not for heroin, but was instead the payment of a portion of the debt owed. Hurtado admitted to selling heroin on numerous occasions, but testified that the purpose of those sales was to reduce the amount owed to Naser. He explained the drug records in his residence by saying that Naser had hired him as an accountant to help pay off the debt. Hurtado also suggested that his son's death in a car accident and alleged threats made against his family were related to the debt he had agreed to repay. He admitted to engaging in negotiations for the purchase of heroin with the undercover agent, but stated that his true purpose in attending the meeting was to learn about his son's death.

Hurtado was convicted following a six-day jury trial. With a base offense level of 34 and a Criminal History Category I, Hurtado's applicable sentencing range was 151 to 188 months' imprisonment. He was sentenced to 151 months' incarceration, followed by a five-year term of supervised release. Hurtado now appeals.

## DISCUSSION

Hurtado raises the following arguments on appeal: that he was compelled to wear prison clothes at trial; that the district court granted his request to proceed *pro se* without adequate inquiry; that he received ineffective assistance of counsel prior to trial; that the district court abused its discretion in refusing to grant him several continuances; that the district court erred in failing to instruct the jury on entrapment; that the district court misunderstood its authority to depart downwardly; and that the cumulative effect of these alleged errors was to deprive him of a fair trial. We address these arguments in turn.

### 1. Appearance in Prison Clothes

Hurtado's principal argument is that he was unconstitutionally compelled to wear his prison clothes during a court appearance. On the first day of trial, which included jury selection, Hurtado arrived in court unexpect-

edly wearing his prison clothes. Hurtado's family claimed that they had tried several times during the previous week to give him street clothes in prison, but were not permitted to do so. They did not, however, bring clothes with them to court. The issue of Hurtado's attire was not brought to the district court's attention at any time prior to the day of trial. The district court inquired if the policy regarding the delivery of clothes to prisoners had changed, to which the United States marshals responded that inmates were allowed to receive clothes in prison. Defense counsel requested a recess to allow Hurtado's family to buy him clothes that day because of the "indelible impression" his appearance might have on the jury. The government took no position on Hurtado's request. The district court refused the request, noting that the problem could have been taken care of before trial and that there was no reason to delay the proceedings. The district court offered a curative instruction, which Hurtado refused.

▬ A defendant "should not be compelled to go to trial in prison or jail clothing because of the possible impairment" of the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial. *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976). Courts should scrutinize instances where defendants wear prison clothes to trial given that "compelling an accused to wear jail clothing furthers no essential state policy." *Id.* at 505, 96 S.Ct. at 1693–94. Because the "particular evil proscribed" is **compulsion,** a defendant must properly object to having to wear prison clothes at trial. *See id.* at 507–10, 96 S.Ct. at 1694–96 (no compulsion where counseled defendant did not object "either before or at any time during the trial").

▬ The first question is thus whether Hurtado was compelled to wear prison garb on the first day of trial. Hurtado claims that he was compelled because he timely objected and because his family made several efforts prior to trial to deliver his street clothes to prison. The government contends that Hurtado was not compelled because there was no policy at the prison to prevent the delivery of clothes, because Hurtado did not raise the

issue with the district court prior to trial, and because no family member brought clothes to court, even though they were allegedly aware of the problem.

We conclude that under the circumstances Hurtado was compelled to wear prison clothes on the first day of trial. Hurtado's counsel objected as soon as he became aware of his client's appearance. *See United States v. Harris,* 703 F.2d 508, 511 (11th Cir.1983) (objection on first day of trial is timely). As such, it does not appear that Hurtado made a tactical decision to wear prison garb in hopes of eliciting sympathy from the jury. *See Williams,* 425 U.S. at 508, 96 S.Ct. at 1695. Certainly the problem could have been avoided had Hurtado voiced his objection prior to trial, when his family allegedly encountered difficulty delivering clothes to the prison. *See United States v. Martin,* 964 F.2d 714, 719 (7th Cir.1992) (defendant should have objected "before any trial proceedings had commenced and not wait[ed] until the middle of the first day of trial after the entire jury selection process and the empaneling of the jury"). Nonetheless, there is no indication that Hurtado's counsel was aware of the problem prior to trial. Although we understand the district court's desire to proceed with the trial, we believe that Hurtado should have been afforded a reasonable opportunity to procure street clothes in light of the potential prejudicial impact of his appearance in prison clothes.

▬ Even where a defendant is compelled to wear prison clothes at trial, however, that constitutional error is subject to harmless error analysis. *See Davidson v. Riley,* 45 F.3d 625, 631–32 (2d Cir.1995) (noting that harmless error analysis applies in context of defendant wearing physical restraints, and interpreting *Williams* as adopting a similar rule in context of prison garb). *See also Martin,* 964 F.2d at 721; *Harris,* 703 F.2d at 512–13; *Mitchell v. Engle,* 634 F.2d 353, 354 (6th Cir.1980); *Boswell v. State of Alabama,* 537 F.2d 100, 104 (5th Cir.1976). We will not affirm a conviction unless the constitutional error is harmless beyond a reasonable doubt. *See United States v. Beverly,* 5 F.3d 633, 639 (2d Cir.1993).

■ Although Hurtado was compelled to wear prison garb at trial, we believe that any error by the district court was harmless beyond a reasonable doubt. Most significantly, the evidence adduced at trial overwhelmingly demonstrated Hurtado's guilt. In addition to Hurtado's admissions, the government presented ample proof of Hurtado's involvement in drug negotiations and sales. Hurtado's only potentially valid defense was his claim that he was entrapped, *see infra*, but he failed to present sufficient evidence of government inducement to cast any doubt on the validity of his conviction. *See Martin*, 964 F.2d at 721; *Boswell*, 537 F.2d at 104 (the error, if any, was harmless where defendant admitted to participating in drug sales and advanced no evidentiary basis for his sole defense of entrapment).

Second, we find it of some importance that Hurtado appeared in prison garb for only one day over the course of a week-long trial. The risk of prejudice to a defendant may well be less in such a case than when a defendant is compelled to wear prison clothes for an entire trial. *See United States v. Birdsell*, 775 F.2d 645, 652 (5th Cir.1985) (although defendant never objected, court finds it significant that defendant wore prison clothes only during voir dire, jury selection, and first afternoon of trial), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1979, 90 L.Ed.2d 662 (1986); *Boswell*, 537 F.2d at 104 (harmless error where defendant appears in prison clothes only during jury venire). *But see Harris*, 703 F.2d at 512–13 (error not harmless where defendant appeared in prison garb only before jury venire, and evidence against him was "substantial" but not overwhelming).

This is by no means to say that we will find harmless error whenever a defendant appears only briefly in prison clothes before a jury; instead, the length of time is a factor to be considered along with the strength of the evidence against the defendant. Moreover, the district court offered to cure any potential prejudice with a curative instruction, which Hurtado rejected. *See, e.g., United States v. Taylor*, 562 F.2d 1345, 1359 (2d Cir.1977), *cert. denied*, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977). Accordingly, we conclude that under the circumstances, any error committed by the district court in refusing to grant an adjournment to allow Hurtado to buy street clothes was harmless beyond a reasonable doubt.

## 2. Inquiry into Request to Proceed Pro Se

■ On the morning of the first day of trial, Hurtado requested that he be allowed to proceed *pro se* because of dissatisfaction with his counsel, who was his third attorney of record. Immediately prior to Hurtado's request, his counsel advised the district court that he had told Hurtado that he was "foolish or incorrect to go to trial" because he lacked any viable defense. Counsel then described the penalties that Hurtado faced under both the government's proposed plea agreement and in the event he was found guilty by a jury. When Hurtado asked to represent himself, the district court informed him: that he had an absolute right to defend himself; that defending himself would be very difficult; that damaging evidence could be introduced against him to which his counsel otherwise might be able to object; that he could not make statements without limitation; that the district court would not advise him on legal matters; that he would have to comply fully with all substantive and procedural rules; and that he could have a legal advisor, but not a co-counsel. The district court also inquired into Hurtado's education, litigation experience, and substance abuse.

Hurtado continued to express his desire to represent himself, despite his lack of legal skills. He stated that he preferred "to take the risk and have [counsel] only advise me because he is not familiar with my life the way I am." Hurtado explained that he wanted to describe to the jury the circumstances surrounding his son's death and the alleged threats against his family, which his counsel refused to do. The district court granted his request after finding that Hurtado "knowingly and voluntarily and intelligently waived his right to counsel."

Hurtado contends on appeal that the district did not adequately inquire as to whether he knowingly and voluntarily waived his right to counsel. Specifically, he contends that the district court did not describe in any mean-

ingful manner the advantages of representation by counsel, nor did the district court advise Hurtado of the nature of the charges and potential penalties he faced and the defenses he might raise.

Under the Sixth Amendment, a criminal defendant enjoys a constitutional right to defend himself. *See Faretta v. California*, 422 U.S. 806, 818–32, 95 S.Ct. 2525, 2532–40, 45 L.Ed.2d 562 (1975); *Williams v. Bartlett*, 44 F.3d 95, 99–100 (2d Cir.1994). An accused may choose to defend himself if that decision is made "intelligently and knowingly, with full awareness of the right to counsel and the consequences of its waiver." *United States v. Tracy*, 12 F.3d 1186, 1191 (2d Cir.1993). Whether a waiver has occurred turns on all the surrounding facts and circumstances, including the experience, background, and conduct of the accused. *Id.* Factors the district court should consider in making this inquiry are "whether the defendant understood that he had a choice between proceeding pro se and with assigned counsel, whether the defendant understood the advantages of having one trained in the law to represent him, and whether the defendant had the capacity to make an intelligent choice." *United States v. Calabro*, 467 F.2d 973, 985 (2d Cir.1972) (quotations omitted), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1386, 35 L.Ed.2d 587 (1973). Although the district court should strive for a "full and calm" discussion with the defendant to assure that he fully understands his decision, we have declined to mandate any particular "talismanic" procedures to this end. *See Tracy*, 12 F.3d at 1192, 1194 (quotation omitted). In short, the record must establish that a defendant knew "what he [was] doing and his choice [was] made with eyes open." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

We conclude that, although the district court might have conducted a fuller inquiry into Hurtado's decision to represent himself, *cf. Tracy*, 12 F.3d at 1191–94, its examination was adequate. The district court warned Hurtado of the specific perils of representing himself and the advantages of having legal representation. Hurtado was also clearly aware of the penalties he faced if convicted. While Hurtado did express some apprehension about representing himself, he clearly stated that he would prefer to proceed *pro se*. *See Tracy*, 12 F.3d at 1194. We also find it significant that Hurtado declined several subsequent offers by the district court to reinstate his counsel. The fact that Hurtado's decision to represent himself was ultimately unwise does not render it involuntary. *See Calabro*, 467 F.2d at 985. Accordingly, we conclude that Hurtado knowingly and voluntarily waived his right to counsel.

### 3. Adequacy of Representation

Hurtado next claims that due to the ineffectiveness of his attorney and the district court's indifference to the fact that Hurtado did not have ample time to review all the evidence in the case, he was forced to represent himself without adequate preparation. Essentially, he claims that he was denied effective assistance of counsel because his prior counsel failed to conduct adequate discovery and properly analyze tape transcripts. He claims that the district court then compounded this prejudice and abused its discretion by denying Hurtado's *pro se* applications for more time to review evidence.

### a. Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94, 104 S.Ct. 2052, 2064–65, 2067–68, 80 L.Ed.2d 674 (1984). Hurtado's primary claim is that his counsel failed to adequately highlight inaccuracies in translated transcripts of his conversations with Naser and the undercover agent. He also argues that his counsel failed to investigate whether the tapes were fabricated and to prepare him sufficiently to represent himself.

Hurtado's claim of ineffective assistance of counsel is meritless. Prior to trial, Hurtado's counsel reviewed the government's discovery materials and secured a district court order to have all the materials translated into Spanish for Hurtado's benefit. When

counsel arrived in court, he was prepared to try the case, but Hurtado then requested that he represent himself. The facts that Hurtado did not agree with counsel's strategy and that counsel was unable to explain the intricacies of criminal law and evidence to Hurtado in a short period of time does not render his assistance constitutionally defective. Moreover, counsel provided Hurtado with substantial assistance as a legal advisor during the trial. Accordingly, counsel's performance did not fall below "an objective standard of reasonableness." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994) (quotations omitted). In addition, the evidence of Hurtado's guilt was overwhelming, and he would therefore be unable to establish prejudice. *See United States v. Simmons*, 923 F.2d 934, 956 (2d Cir.), *cert. denied*, 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991).

### b. Failure to Grant a Continuance

▉ Hurtado's second related contention is that the district court failed to afford him enough time to prepare his case once he chose to represent himself. On the first day of trial, the district court denied Hurtado's request for more time to review certain documents that he claimed he had not received previously. The district court also denied similar requests for more time following a three-day adjournment that was designed to allow two interpreters to correctly translate certain tapes, the initial translation of which was called into question by an official interpreter. In refusing one of the requests, the district court stated:

> You had this material in your hands for an adequate period of time . . . You had two counsels to prepare the case . . . You decided to substitute yourself as counsel after warnings were given to you about what would happen if you did . . . You are not going to drag this trial on indefinitely.

At several other points, Hurtado asked for more time to prepare his defense, including his claim that the tapes were fabricated. Although these requests were typically denied, the district court occasionally granted Hurtado time to review documents.

▉ Hurtado concedes that we review the district court's decision not to grant a continuance for time to prepare for an abuse of discretion. *See United States v. Beverly*, 5 F.3d 633, 641 (2d Cir.1993). The sole requirement of such a denial is that it be reasonable under the circumstances. *See United States v. Rosenthal*, 470 F.2d 837, 844 (2d Cir.1972) (no abuse of discretion where court denies motion for continuance by *pro se* defendant who chose to represent himself four days before trial), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2298, 36 L.Ed.2d 975 (1973). Hurtado claims that the district court abused its discretion because he made clear which documents he had not had adequate time to review, so that any problem could be easily cured.

The district court did not abuse its discretion in declining to grant Hurtado the continuances. A review of the record and oral argument indicates that the government turned over the vast majority of relevant materials to the defense well in advance of trial. When Hurtado asked on the first day of trial to represent himself, he was informed of the consequences of that decision—specifically, that the district court would expect him to adhere to the same standards as any attorney. Although Hurtado understandably wanted more time to prepare, we find that the district court did not abuse its discretion in declining to grant the continuances he requested.

### 4. Entrapment Defense

Hurtado's next argument is that the district court erred in failing to instruct the jury on an entrapment defense. During a midtrial charge conference, the parties and the district court agreed that the jury would be so charged. At the close of evidence, however, the government moved to strike the charge because of the absence of proof to support it. The district court granted the motion, noting "[t]here is absolutely no basis I see for an entrapment defense."

▉ A defense theory must be charged so long as it has "some foundation in the proof, no matter how tenuous that defense may appear to the trial court." *United*

*States v. Dove,* 916 F.2d 41, 47 (2d Cir.1990). Absent an abuse of discretion, a district court's determination that there was no foundation for the charge must be upheld. *See United States v. Pilarinos,* 864 F.2d 253, 256 (2d Cir.1988).

■ "[A] valid entrapment defense has two related elements: government inducement of the crime, and lack of predisposition on the part of the defendant to engage in the criminal conduct." *See United States v. Harvey,* 991 F.2d 981, 992 (2d Cir.1993) (quotation omitted). Once the defendant produces evidence of inducement, the government bears the burden of proving predisposition beyond a reasonable doubt. *See United States v. Lew,* 980 F.2d 855, 856 (2d Cir. 1992). If the government then presents uncontradicted proof of predisposition, the entrapment defense is precluded as a matter of law. *See United States v. Dunn,* 779 F.2d 157, 159 (2d Cir.1985).

■ Hurtado claims that his testimony provided the foundation for an entrapment defense. He testified that the only reason he was involved in the drug transactions was to satisfy the debt he agreed to assume, and that he felt coerced to pay this debt because of perceived threats to himself and his family. He claims that the undercover agent and Naser were the parties who pressured him to pay the debt.

Arguably there is some evidence of inducement, given that a government agent and an informant contacted Hurtado with respect to the drug transactions. The government, however, presented uncontradicted evidence that Hurtado was predisposed to commit the crime. The government demonstrated that Hurtado was dealing and negotiating with Naser prior to the time that Naser agreed to cooperate with the authorities. Moreover, there was ample proof that Hurtado had been involved in drug dealing prior to any involvement with a government agent or informant. Hurtado offered no evidence to rebut this showing of predisposition. Accordingly, the district court did not err in declining to instruct the jury on entrapment.

**5. Failure to Downwardly Depart**

■ Hurtado next claims that the district erred in failing, *sua sponte,* to downwardly depart given that Hurtado was allegedly coerced into committing the charged offense because of his fear of reprisal against himself and his family. Hurtado did not raise this issue at sentencing.

■ A district court's refusal to depart downward is not appealable "unless the guidelines were misapplied, the court misapprehended its authority or imposed an illegal sentence." *United States v. Haynes,* 985 F.2d 65, 68 (2d Cir.1993) (citation omitted). If the district court's refusal to depart rested on a "misapprehension" of its legal authority, an appeal is proper, and we review the propriety of that legal determination *de novo. Id.* In this case, there is no indication that the district court misapprehended its authority to depart downwardly. *See United States v. Whittaker,* 999 F.2d 38, 43 (2d Cir.1993) The district court's silence on the issue does not support an inference that the court misunderstood its authority to depart. *See United States v. Lawal,* 17 F.3d 560, 563 (2d Cir.1994). Moreover, by failing to raise the issue at sentencing, Hurtado waived any claim he might have had. *See United States v. Howard,* 998 F.2d 42, 50 (2d Cir.1993). Accordingly, we reject his contention.

**6. Additional Arguments**

■ Hurtado raises a number of additional arguments in a supplemental *pro se* brief, two of which we address below. Hurtado first contends that the district court committed plain error in failing to instruct the jury that Naser's cooperation agreement and guilty plea could only be used to evaluate Naser's credibility, and not as evidence of Hurtado's guilt. *See United States v. Halbert,* 640 F.2d 1000, 1006–07 (9th Cir.1981). Hurtado himself never requested such an instruction. Although such an instruction should have been given if requested, *see United States v. Ramirez,* 973 F.2d 102, 105 (2d Cir.1992), the district court's failure to *sua sponte* issue such a limiting instruction is not plain error in light of the overwhelming evidence of his guilt. *See United States v. DeLaMotte,* 434 F.2d 289, 294 (2d Cir.1970),

**586**

cert. denied, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971).

 Hurtado also claims that the district court erred in failing to instruct the jury that he could not be found to have conspired with an informant or government agent, and that he received ineffective assistance of counsel by his counsel's failure to move to quash the indictment on this ground. Hurtado did not raise this argument in the district court, so it is also governed by the plain error standard. Although Hurtado could not be convicted if the conspiracy consisted solely of agents and informants, *see United States v. Goldberg*, 756 F.2d 949, 958 (2d Cir.), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985), the presence of such an agent does not destroy a conspiracy where at least two of the persons involved are private individuals. *See United States v. Miranda–Ortiz*, 926 F.2d 172, 175 (2d Cir.), *cert. denied*, 502 U.S. 928, 112 S.Ct. 347, 116 L.Ed.2d 287 (1991).

In this case, the indictment charged that Hurtado conspired with Naser before Naser became an informant. Naser was not charged as a co-conspirator with respect to overt acts occurring after Naser's arrest. *See, e.g., United States v. Sacco*, 436 F.2d 780, 783 (2d Cir.), *cert. denied*, 404 U.S. 834, 92 S.Ct. 116, 30 L.Ed.2d 64 (1971). Accordingly, the district court did not err in failing to so instruct the jury, and counsel's failure to move to quash the indictment on this ground was not ineffective assistance of counsel. We also reject the remaining arguments raised by Hurtado in his *pro se* brief.

**7. Deprivation of Fair Trial**

 Hurtado's last argument is that, even if none of the alleged errors standing alone would warrant reversal, he was deprived of a fair trial by their collective impact, especially given his *pro se* status. He claims that he should receive a new trial based on his appearance in prison clothes, his counsel's refusal to make certain arguments, his reluctant decision to represent himself, and the district court's refusal to grant him extensions of time to prepare and review evidence. *See, e.g., United States v. Guglielmini*, 384 F.2d 602, 607 (2d Cir.1967); *see*

*also Lundy v. Campbell*, 888 F.2d 467, 481 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990).

We disagree. Although the district court might have been more accommodating on occasion, the bulk of the difficulties Hurtado faced were due to his decisions to defend himself and to disregard the advice of counsel. Moreover, the district court committed only one error—refusing to delay the start of trial, thereby compelling Hurtado to wear prison garb on the first day of trial—which, in view of the overwhelming evidence of Hurtado's guilt, we believe was harmless beyond a reasonable doubt. In summary, the record discloses neither a particular error requiring reversal nor an accumulation of factors warranting a new trial.

**CONCLUSION**

Based on the foregoing, the judgment of the district court is AFFIRMED.