*McGhee v. Martuscello*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of November, two thousand twenty-four.

PRESENT:
> AMALYA L. KEARSE,
> RICHARD J. SULLIVAN,
> BETH ROBINSON,
> *Circuit Judges.*

---

DARRIN MCGHEE,

> *Petitioner-Appellant*,

> v.                                                              No. 24-326

DANIEL F. MARTUSCELLO III, Commissioner, New York State Department of Corrections and Community Supervision, THOMAS

NAPOLI, Acting Superintendent, Auburn
Correctional Facility,

*Respondents-Appellees*.[*]

| | |
|---|---|
| **For Petitioner-Appellant:** | DANIEL B. FEDER (H. Gregory Baker, Lauren Schorr Potter, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, NY. |
| **For Respondent:** | ALEXANDER MICHAELS, Assistant District Attorney (Steven C. Wu, Chief, Appeals Division, Stephen J. Kress, Chief, Federal Habeas Corpus Unit, *on the brief*), *for* Alvin L. Bragg, Jr., District Attorney for New York County, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's January 3, 2024 judgment is **AFFIRMED**.

Petitioner Darrin McGhee appeals from a judgment of the district court denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, following his conviction in New York state court for the second-degree murder

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

of Archie Phillips and for the criminal possession of a weapon second-degree. McGhee argues that (1) his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were violated when the prosecution failed to disclose a report documenting an interview with an eyewitness to the murder ("Individual-A"); (2) his Fourteenth Amendment right to due process was violated when the state trial court (a) permitted the introduction of eyewitness Nicole Davis's pretrial identifications of McGhee and (b) admitted, in violation of New York evidence law, a detective's testimony describing an out-of-court statement in which Davis identified McGhee as the shooter; and (3) these cumulative errors deprived him of a fair trial. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I.    Standard of Review

"We review *de novo* a district court's decision to deny a defendant's petition for a writ of habeas corpus under 28 U.S.C. § 2254." *Murray v. Noeth*, 32 F.4th 154, 157 (2d Cir. 2022). A federal court may issue a writ of habeas corpus under section 2254 only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or (2) "was based on an

unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d). McGhee's petition asserted only that the New York state courts unreasonably applied clearly established federal law, so we focus on section 2254(d)(1).

We have explained that "[a] decision is an unreasonable application of clearly established federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Jordan v. Lamanna*, 33 F.4th 144, 150 (2d Cir. 2022) (alterations accepted and internal quotation marks omitted). However, the application of federal law must be "objectively unreasonable, not merely wrong," and "even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted). In other words, the state court's ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond *any possibility* for fairminded disagreement." *Id.* at 419–20 (emphasis added) (internal quotation marks omitted); *see also Brown v. Davenport*, 596 U.S. 118, 136 (2022) ("[Section 2254] asks whether *every* fairminded jurist would agree that an error was prejudicial."). The Supreme Court has observed that, "the more general the

federal rule, the more leeway state courts have . . . before their decisions can be fairly labeled unreasonable." *Brown*, 596 U.S. at 144 (alterations accepted and internal quotation marks omitted). This is because section 2254 "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotation marks omitted).

## II.   *Brady* Claim

McGhee first argues that the New York Court of Appeals unreasonably applied clearly established federal law when it denied his *Brady* claim regarding the report of the interview with Individual-A. As *Brady* makes clear, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. But "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "The *Brady* rule is a general rule" that asks "a question that is a matter of judgment rather than one with a clear, obvious answer," so on habeas review, we afford state courts a considerable degree of latitude. *McCray*

5

*v. Capra*, 45 F.4th 634, 641 (2d Cir. 2022). And when reviewing a *Brady* ruling, we must "evaluate the withheld evidence in the context of the entire record." *Turner v. United States*, 582 U.S. 313, 324–25 (2017) (alterations accepted and internal quotation marks omitted).

The New York Court of Appeals determined that the *Brady* violation was not material because "there [was] no reasonable possibility that the People's failure to disclose the witness statement at issue undermined the fairness of defendant's trial or impacted the verdict." *People v. McGhee*, 36 N.Y.3d 1063, 1065 (2021). As the New York Court of Appeals observed, Individual-A's "description of the shooter and his flight path did not differ in any material respect from that of" Nicole Davis. *Id.* Both explained that the shooter fled the scene up a tall flight of stairs near the murder scene (the "110 stairs") and that the shooter was wearing all beige, including a beige hat.

McGhee concedes that he was wearing all beige that day and ascended the 110 stairs following the shooting. He nevertheless seizes on various discrepancies between Individual-A's account of the shooting and Davis's testimony, including that: (1) Individual-A stated that the shooter was speaking

to Phillips before the shooting,[1] while Davis testified that the shooter came up from behind Phillips and immediately shot him in the back; (2) Individual-A stated that after the first shot, Phillips fled and the shooter chased Phillips before shooting him three more times in the back, while Davis testified that the shooter shot Phillips in the back four times in rapid succession; (3) Individual-A stated that the shooter was wearing a bucket hat, while Davis testified that he was wearing a "flat cap" with "a snap in front," J. App'x at 1167; (4) Davis testified that the shooter was wearing a jacket, while Individual-A did not mention a jacket; and (5) Individual-A stated that the shooter ran away from the scene, while Davis testified that the shooter walked away at "a slow pace," *id.* at 1168.

Considering the withheld evidence in the context of the entire record, we cannot say that the New York Court of Appeals unreasonably applied clearly established federal law when it denied McGhee's *Brady* claim. To the contrary, in light of the significant ways in which Individual-A's statement bolstered Davis's testimony, the New York Court of Appeals reasonably concluded that "the undisclosed witness statement lacked sufficient impeachment value [with

---

[1] McGhee asserts that the undisclosed witness recounted that the shooter shot the victim "once in the *front*," McGhee Br. at 36, but this observation appears nowhere in the undisclosed interview report and is, at best, an extrapolation from the report's contents.

7

respect to Davis's testimony] to cast any doubt on the fairness of [the] defendant's trial." *McGhee*, 36 N.Y.3d at 1065.

The New York Court of Appeals also appropriately emphasized the "considerable other evidence" of guilt in the record. *Id.*; *see also United States v. Hunter*, 32 F.4th 22, 32 (2d Cir. 2022) ("Where the evidence against the defendant is ample or overwhelming, the withheld *Brady* [evidence] is less likely to be material." (internal quotation marks omitted)). In particular, the prosecution called a cooperating witness, John Reynolds, who testified that he and a local drug boss, Mike Lilly, hired McGhee to kill Phillips as revenge for Phillips robbing Lilly's dealers. Reynolds's estranged wife also testified and corroborated Reynolds's account. In particular, she described events consistent with a plan to murder, including McGhee instructing Reynolds to use gloves when cleaning the gun and an occasion where McGhee left with the gun and returned fifteen minutes later wearing kitchen gloves and saying, "It was the wrong person." J. App'x at 1459.

Additionally, the prosecution presented cell-phone records reflecting that McGhee and his co-conspirators were in the vicinity of the public-housing complex where the murder took place and called each other mere minutes before

8

the shooting. Surveillance footage from an adjacent street also "show[ed] [the] defendant's proximity, clothing, and behavior immediately after the crime." *McGhee*, 36 N.Y.3d at 1065. And in recorded phone conversations from jail, McGhee admitted that he appeared in the surveillance videos.

Finally, McGhee argues that Individual-A identified another suspect who had a separate motive to kill Phillips. But this statement was based on "[t]he word on the street," J. App'x at 235, and Individual-A later told prosecutors and defense counsel that "he ha[d] no idea who made this statement," *id.* at 305. Consequently, such testimony would have been inadmissible hearsay. And while McGhee now argues that such information could have generated further investigative leads, this amounts to "mere speculation." *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995).

For all these reasons, we cannot say that "*every* fairminded jurist would agree" that the undisclosed witness report was material and that McGhee was deprived of his due-process rights. *Brown*, 596 U.S. at 136.

## III. Identification Evidence

On the evening of the murder, Davis was shown surveillance footage from which she identified McGhee as the person she had seen shoot Phillips, and

twenty-one hours later, she picked him out of a photo array.[2]   Six weeks later,

Davis identified McGhee again at an in-person lineup.   McGhee argues that all

the pretrial identifications were impermissibly suggestive.   McGhee also objects

to the admission of hearsay testimony by the investigating detective that Davis

exclaimed, "That's him.   That's him.   He is the one that shot the boy," while

viewing the surveillance videos.   J. App'x at 1253 (internal quotation marks

omitted).

An out-of-court identification may not be admitted at trial if the

identification procedure used by law enforcement was (1) unduly and

unnecessarily suggestive, and (2) so unreliable that there is a very substantial

likelihood of misidentification.   *See Manson v. Brathwaite*, 432 U.S. 98, 114–17

(1977); *Simmons v. United States*, 390 U.S. 377, 384–85 (1968).   In evaluating the

reliability of an identification, we consider "the opportunity of the witness to

view the criminal at the time of the crime, the witness' degree of attention, the

accuracy of the witness' prior description of the criminal, the level of certainty

demonstrated by the witness at the confrontation, and the length of time between

the crime and the confrontation."   *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

---

[2] The photo array was not ultimately introduced, so it is not at issue on this habeas petition.

And, as we have noted, "[t]he determination of whether an identification procedure violates due process is governed by an extraordinarily general standard that hews closely to the facts of a particular case and turns on a court's judgment in evaluating those facts," which means that the state court is "entitled to significant 'leeway' when we review its decision for reasonableness" on a habeas petition. *Brisco v. Ercole*, 565 F.3d 80, 90 (2d Cir. 2009).

On remittitur from the New York Court of Appeals, the New York Supreme Court, Appellate Division concluded that the lineup identification was not unduly suggestive. McGhee emphasizes that the detective asked Davis at the lineup if she recognized anyone from the photo array. According to McGhee, since the identifications from the video surveillance footage and, in turn, the photo array were impermissibly suggestive, the detective's comment compounded this error and tainted the lineup identification by tying that identification to Davis's prior photo array identification. But the Appellate Division reasonably emphasized that the lineup occurred six weeks after the photo array and Davis told the detective at the lineup that she recognized McGhee "as the one who shot the victim, not as the one in the photo array."

11

*People v. McGhee*, 146 N.Y.S.3d 635, 637 (1st Dep't 2021). The Appellate Division's conclusion was supported by the record. *See* J. App'x at 614.

But even if we were to accept McGhee's argument that the lineup was unduly suggestive, that identification could nevertheless reasonably be deemed reliable, since Davis had a good opportunity to view the shooting, which took place in the daytime; she was standing forty to sixty feet from the shooter at the time; and she made eye contact with him immediately after the shooting. *See United States v. Finley*, 245 F.3d 199, 203–04 (2d Cir. 2001) (finding reliability when the witness viewed the defendant from approximately fifty feet away); *Coleman v. Alabama*, 399 U.S. 1, 4–6 (1970) (concluding that a fleeting but "real good look" at the assailant was sufficient for identification). Davis had "[n]o doubt" that she recognized McGhee, J. App'x at 1196–97, since she had seen him twice before at her apartment building and had briefly spoken with him, *see United States v. Gershman*, 31 F.4th 80, 94 (2d Cir. 2022) (concluding that a witness's identification was reliable because he "immediately recognized [the defendant] as a neighbor with whom he had ridden the elevator and conversed" and he identified the defendant in court with "'100 percent' certainty"). Davis was even able to

perceive small changes in McGhee's appearance – he shaved his goatee and had "shrunk" in build, J. App'x at 1183 – which other witnesses corroborated.

McGhee challenges the reliability of Davis's identification by insisting that she was initially "very vague in describing who the shooter was." *Id.* at 1365. But Davis repeatedly testified that police had interrogated her outside on a terrace and that "living in the projects, you are not supposed to talk" to the police, so she "was nervous of talking." *Id.* at 1185. The investigating detective even recalled that "she was trying to hide" while they questioned her on the terrace. *Id.* at 1365. But Davis explained that she eventually overcame her nerves because she recognized that "if it was one of [her] kids, [she] would want somebody to come forward and tell the truth." *Id.* at 1246. For these reasons, we conclude that the state court reasonably upheld the admission of Davis's lineup identification.

McGhee also challenges the admission of Davis's video identification, which the Appellate Division held was "unduly suggestive" but "harmless error in light of the overwhelming evidence of guilt." *McGhee*, 146 N.Y.S.3d at 637. Our review of a state court's determination that an error was harmless involves two components. First, to overcome that state-court determination, a habeas

petitioner must show that an error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks omitted). Second, the petitioner must show that the harmless-error determination was an unreasonable application of federal law. *See Brown*, 596 U.S. at 127. McGhee fails at the first step because he has failed to show that any error had a substantial and injurious effect. Even if the video identification had been excluded, Davis still would have been permitted to testify as to the lineup identification and still would have identified McGhee in court as the shooter. Plus, as detailed above, the other evidence of McGhee's guilt was overwhelming. We therefore conclude that the admission of the video identification does not entitle McGhee to habeas relief.

McGhee next asserts that the trial court erroneously permitted the investigating detective to testify about an excited utterance that Davis made when she saw McGhee on the surveillance footage. J. App'x at 1253 ("That's him."). But we have explained that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983). McGhee must demonstrate that the ruling was "so egregious as to

14

implicate the Fourteenth Amendment's guarantee of due process," *Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013) – "[i]n short[, the error] must have been crucial, critical, [and] highly significant," *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (internal quotation marks omitted). McGhee cannot meet that high bar. The detective's testimony "added little of an incriminating nature" to Davis's own testimony that she identified McGhee from the surveillance footage, at the lineup, and in court. *Evans*, 712 F.3d at 135. Accordingly, we conclude that McGhee is not entitled to habeas relief on these grounds either.

## IV.  Cumulative Effect

Finally, McGhee argues that the cumulative effect of the above alleged errors deprived him of a fair trial. However, our caselaw is clear that habeas petitioners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). McGhee himself recognizes that "he may not have raised the cumulative error claim [in state court] exactly as it appears in his habeas petition." McGhee Br. at 54.  In fact, his defense counsel never mentioned this cumulative-error argument at all in his initial briefing to the Appellate Division. Nor did the

parties address this argument on the merits before the New York Court of Appeals. But even if we were to reach McGhee's cumulative-error claim, the cumulation of otherwise harmless errors here is outweighed by the overwhelming evidence of McGhee's guilt. *See United States v. Hurtado*, 47 F.3d 577, 586 (2d Cir. 1995).

*     *     *

We have considered McGhee's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

16